GARY M. RESTAINO
United States Attorney
District of Arizona
KRISTEN BROOK
Assistant U.S. Attorney
Arizona State Bar No. 023121
ARON KETCHEL
Assistant U.S. Attorney
California State Bar No. 250345
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Kristen.Brook@usdoj.gov
Email: Aron.Ketchel@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    vs.<br><br>Bobby Lee Seely, Jr.<br>a.k.a. Bobby Lee Seely-Bey,<br><br>    Defendant. | CR-20-0643-PHX-DLR<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND OBJECTION TO PRESENTENCE INVESTIGATION REPORT** |

The United States, through undersigned counsel, respectfully responds to defendant Bobby Seely's second objection to the Revised Presentence Investigation Report ("Rev. PSR").

In his second objection to the PSR, defendant contends that the Court may not consider as relevant conduct defendant's possession of the non-serialized assault rifle found in defendant's storage unit because the government has not established that the firearm traveled in interstate commerce. Dkt. No. 102. Defendant's assertion is contrary to well-established law regarding relevant conduct.

The Ninth Circuit has held that "non-federal relevant conduct can fall within the jurisdiction of § 1B1.3(a)(2) of the federal guidelines." *United States v. Newbert*, 952 F.2d 281, 284 (9th Cir. 1991). The *Newbert* Court further explained:

> We find no intention by the Sentencing Commission to narrow §§ 1B1.3(a)(2) and (a)(3) to federal conduct only. Those subsections specifically direct the consideration of all acts that were part of the same course of conduct or common scheme or plan, as well as all harm that resulted from those acts. The background comment stresses that the relevant conduct is established if it is a part of the same course of conduct.

*Id.* Thus, the Court may consider any conduct that is violative of state law as relevant conduct pursuant to U.S.S.G. § 1B1.3 even if such conduct does not violate federal law.

Defendant's possession of ammunition found inside the high-capacity magazine inserted into the assault rifle, as well as the ammunition in the second high-capacity magazine found next to the rifle, violated federal law. Federal law prohibits a prohibited person from possessing ammunition, which has traveled in interstate or international commerce. 18 U.S.C. § 922(g)(1). Defendant sustained multiple convictions for felonies and domestic violence misdemeanors and consequently was prohibited from possessing ammunition with an interstate nexus. *See* Rev. PSR ¶¶ 36-38, 41-42, 49, 53. The ammunition found in defendant's storage unit, and inside the large-capacity magazine inserted into the assault rifle, was manufactured in South Korea. Ex. D (interstate nexus report authored by ATF SA Lowell Farley). In addition, defendant was prohibited from possessing the rifle at issue under Arizona state law, irrespective of whether the rifle traveled in interstate commerce. A.R.S. § 13-3102(A)(4); Rev. PSR ¶¶ 38, 49; *see also* A.R.S. § 13-3101(A)(7)(b) (defining "prohibited possessor," in pertinent part, as any person "[w]ho has been convicted within or without this state of a felony").

As the government set forth in its prior response, defendant's possession of the assault rifle was related to his count of conviction. *See* Dkt. No. 100. The Court is permitted to consider defendant's possession of the assault rifle as relevant conduct even if the government cannot establish that the firearm traveled in interstate commerce because defendant was barred from possessing the rifle under state law. *See Newbert*, 952 F.2d at 284; *United States v. Gill*, 864 F.3d 1279, 1280 (11th Cir. 2017) ("We agree with the Seventh Circuit that a firearm may be counted under § 2K2.1(b)(1) if state law prohibited the defendant from possessing it, even if federal law did not."); *United States v. Jones*, 635

2

F.3d 909, 919 (7th Cir. 2011) ("The fact that Jones's possession of the rifle constituted a state rather than a federal crime does not preclude its treatment as relevant conduct."); *United States v. Ahmad*, 202 F.3d 588, 591 (2nd Cir.2000) (finding that if conduct may only be charged as a state crime, but "would have been a federal offense but for lack of a jurisdictional element such as transportation across state lines," then it can be included under § 1B1.3(a)(2)).

The case upon which defendant relies, *United States v Campbell*, 372 F.3d 1179 (10th Circuit, 2004), is distinguishable. In *Campbell*, at his sentencing hearing, Campbell asserted that his possession of a firearm should not be considered relevant conduct because the government had not established the firearm traveled in interstate commerce. *Id.* at 1181. The government responded by stating that the court did not need to consider interstate commerce and never asserted that the court could consider Campbell's possession of the firearm under state law. *Id.* The district court agreed with the government's assertion (which was incorrect) and made no further findings. *Id.* On appeal, the government conceded that it erroneously informed the district court that it did not have to consider interstate nexus for purposes of determining if possession of the rifle violated federal law. *Id.* at 1182. Notably, the issue of whether state law prohibited Campbell from possessing the pertinent firearm was not raised nor considered by either the trial court or the Tenth Circuit.

Under established Ninth Circuit law, and the law of numerous other Circuits, the Court may consider conduct that violates state law for purposes of determining relevant conduct under U.S.S.G. § 1B1.3 and determining the applicable offense level under § 2K2.1. The Court should find that defendant's possession of an assault rifle loaded with a high-

///

///

///

3

capacity magazine was relevant conduct to defendant's count of conviction and that the applicable offense level is 20.  (Rev. PSR ¶ 22.)

Respectfully submitted this 14th day of April, 2022.

GARY M. RESTAINO<br>
United States Attorney<br>
District of Arizona<br>
<br>
*s/Kristen Brook*<br>
*s/Aron Ketchel*<br>
KRISTEN BROOK<br>
ARON KETCHEL<br>
Assistant U.S. Attorneys

# Exhibit A



# Exhibit B



# Exhibit C

FD-302 (Rev. 5-8-10)

- 1 of 2 -

UNCLASSIFIED//FOUO

FEDERAL BUREAU OF INVESTIGATION



Date of entry  10/27/2021

(U/FOUO) On October 27, 2021, Task Force Officer (TFO) Lowell Farley, PX-NS3, checked out Exhibit 1B(3) from FBI Phoenix Evidence, and transported the said exhibit to the FBI Phoenix firearms range located on at the United States Bureau of Prisons (USBOP) Federal Correctional Institute (FCI) Phoenix, located ███████████████████████████████████████ in Maricopa County, in the Phoenix Division of the District of Arizona. It should be noted that TFO Farley is a Senior Special Agent (SSA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has received specialized training from ATF as an interstate nexus expert and is a recognized expert in United States District Court for the Southern District of Texas and for the District of Arizona, for the classification of firearms and ammunition and whether such have moved in or affected interstate commerce. It should also be noted that Exhibit 1B(3) is described as an unknown make, unknown model, .223 Remington and/or 5.56 x 45 mm NATO caliber rifle, no serial number.

(U/FOUO) On that same date, TFO Farley arrived at the said FBI Phoenix firearms range, inspected the firearm described as Exhibit 1B(3), and noted the firearm was in serviceable condition. TFO Farley also handled the firearm using gloves.

(U/FOUO) On that same date, TFO Farley loaded and charged the firearm described as Exhibit 1B(3) with PMag brand model GenM2 firearm magazine completely loaded with thirty (30) rounds of factory-loaded Winchester brand 5.56 x 45 mm NATO caliber ammunition with a load of 64 grains per round of ammunition. After loading and charging the firearm described as Exhibit 1B(3), TFO Farley successfully test-fired the said firearm, discharging a total of five (5) rounds of the said Winchester brand 5.56 x 45 mm NATO caliber ammunition. TFO Farley noted the firearm functioned as designed. TFO Farley also noted the firearm fired in semi-automatic mode only, discharging

UNCLASSIFIED//FOUO

Investigation on  10/27/2021  at  Phoenix, Arizona, United States (In Person)

File # ███████████████  Date drafted  10/27/2021

by  FARLEY JR LOWELL IRVEN

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

UNCLASSIFIED//FOUO

Continuation of FD-302 of (U//FOUO) Test-fire of Exhibit 1B(3) , On 10/27/2021 , Page 2 of 2

one (1) round of ammunition per trigger pull.

(U/FOUO) On that same date, TFO Farley concluded the test-fire of Exhibit 1B(3) at the said FBI Phoenix firearms range, returned to FBI Phoenix, and checked Exhibit 1B(3) back into FBI Phoenix Evidence.

UNCLASSIFIED//FOUO

# Exhibit D

| U.S. Department of Justice<br>Bureau of Alcohol, Tobacco, Firearms and Explosives | | **Report of Investigation** | |
|---|---|---|---|
| Title of Investigation:<br>Bobby Lee SEELY Jr (JTTF Assist/NICS Standard) | | Investigation Number: | Report Number:<br>1 |

## SUMMARY OF EVENT:

Interstate Nexus Report.

1. On October 8, 2020, Senior Special Agent (SSA) Lowell Farley, Phoenix Group IV, physically examined one (1) firearm and four (4) exhibits of ammunition for Federal Bureau of Investigation (FBI) Task Force Officer (TFO) David Hubalik for purposes of determining classification under Title 18, United States Code (U.S.C.), Chapter 44, and whether such firearm and ammunition have moved in or affected interstate commerce.

2. On that same date, SSA Farley examined the following firearm's markings which include but are not limited to the serial number, name of the manufacturer, model (if designated), caliber or gauge, and also, when applicable, the importer. SSA Farley also examined the following ammunition's markings which include but are not limited to the head stamp(s) and various other markings (if any) on the ammunition casings. The exhibits are described as follows:

   ❖ Exhibit A: Unknown make, Unknown model, .223 Remington caliber, AR-15 style rifle bearing no serial number.

   ❖ Exhibit B: One (1) Magpul brand firearm magazine containing thirty (30) live rounds of .223 Remington caliber ammunition bearing a known PMC brand head stamp.

   ❖ Exhibit C: One (1) Magpul brand firearm magazine containing thirty (30) live rounds of .223 Remington caliber ammunition bearing a known PMC brand head stamp.

   ❖ Exhibit D: Forty-one (41) live rounds of .223 Remington caliber ammunition bearing a known PMC brand head stamp.

   ❖ Exhibit E: Eighty-five (85) live rounds of .223 Remington caliber ammunition bearing a known Wolf brand head stamp.

| Prepared by:<br>Lowell I. Farley Jr | Title:<br>Senior Special Agent, Phoenix IV (Intelligence) Field Office | Signature: | Date:<br>10/16/2020 |
|---|---|---|---|
| Authorized by:<br>Lisa M. Sanks | Title:<br>Group Supervisor, Phoenix IV (Intelligence) Field Office | Signature: | Date:<br>10-20-2020 |
| Second level reviewer (optional):<br>Gabriel R. Pinon | Title:<br>Special Agent in Charge, Phoenix Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

U.S. v. Bobby Seely 00364

| Title of Investigation: Bobby Lee SEELY Jr (JTTF Assist/NICS Standard) | Investigation Number: | Report Number: 1 |
|---|---|---|

3. In addition to the physical examination of the said firearm and ammunition, SSA Farley further researched the firearm and ammunition by referencing ATF's records of firearm and ammunition manufacturers and other industry-related reference materials. These reference materials are widely known and used by, both, law enforcement and civilian firearms and ammunition experts to obtain information about firearms and ammunition and their respective manufacturers, including a firearm's and ammunition's place of manufacture and other matters of interest related to firearms and ammunition. These reference materials are routinely relied upon to determine the place of manufacture of firearms and ammunition.

**FINDING(S):**

Based upon the physical examination of the firearm and ammunition, in conjunction with the research, knowledge, and experience of SSA Farley, it is his opinion that:

- The place of manufacture of Exhibit A cannot be determined at this time.

- Exhibit B was manufactured in the Country of South Korea.

- Exhibit C was manufactured in the Country of South Korea.

- Exhibit D was manufactured in the Country of South Korea.

- Exhibit E was manufactured in the Country of Russia.

**CONCLUSION(S):**

- The receiver of Exhibit A is a firearm as defined in Title 18, U.S.C., Chapter 44, Section 921(a)(3); however, its place of manufacture cannot be determined at this time.

- Exhibit B is ammunition as defined in Title 18, U.S.C., Chapter 44, Section 921(a)(17) and was not manufactured in the State of Arizona.

- Exhibit C is ammunition as defined in Title 18, U.S.C., Chapter 44, Section 921(a)(17) and was not manufactured in the State of Arizona.

- Exhibit D is ammunition as defined in Title 18, U.S.C., Chapter 44, Section 921(a)(17) and was not manufactured in the State of Arizona.

- Exhibit E is ammunition as defined in Title 18, U.S.C., Chapter 44, Section 921(a)(17) and was not manufactured in the State of Arizona.

**OPINION:**

It is the opinion of SSA Farley that if Exhibits B, C, D, and E were received and/or possessed in the State of Arizona, they moved in or affected interstate commerce. SSA Farley is unable to determine whether or not Exhibit A has moved in or affected interstate commerce at this time.

U.S. v. Bobby Seely 00365

| Title of Investigation: Bobby Lee SEELY Jr (JTTF Assist/NICS Standard) | Investigation Number: | Report Number: 1 |
|---|---|---|

**NOTE:**

SSA Farley noted Exhibit A fits the definition of a Privately Manufactured Firearm (PMF) which are commonly called ghost-guns. These types of firearms are completed from an unfinished receiver that does not the same ATF required markings that finished receivers require. SSA Farley function-tested this firearm for fully-automatic fire capability. The firearm showed the capability only for semi-automatic fire.

It should be noted that SSA Farley was not able to physically examine each round of ammunition contained in Exhibits B and C because, at the time of recovery, the live rounds of ammunition were contained in firearm magazines. SSA Farley noted the head stamps on the rounds of ammunition that protruded from the top of the firearm magazine. Prior to offering any testimony in any court proceeding, SSA Farley will physically examine each round of the live ammunition contained in Exhibits B and C.

**ATTACHMENTS:**

- ❖ Statement of Qualifications of SSA Farley.